UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARNER PROPERTIES &
MANAGEMENT, LLC,

    Plaintiff,

v.

                                  Case No. 17-11439
                                District Judge Victoria A. Roberts
                                Magistrate Judge Mona K. Majzoub

MARBLECAST OF MICHIGAN,
INC., et al.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT AMERICAN WOODMARK'S MOTION FOR SUMMARY JUDGMENT (Doc. #48)

**I.    INTRODUCTION**

On May 4, 2017, Garner Properties & Management, LLC ("Garner"), individually and as a representative of similarly-situated persons, filed suit against Defendants Marblecast of Michigan, Inc. ("Marblecast") and American Woodmark Corporation ("American Woodmark"). Garner says Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending it and similarly-situated persons unsolicited fax advertisements. American Woodmark moves for summary judgment, asserting that there is no evidence from which a reasonable juror could find that it qualifies as a "sender" of the faxes under the TCPA.

Because the recent decision in *Health One Medical Center, Eastpointe P.L.L.C. v. Mohawk, Inc.*, 889 F.3d 800 (6th Cir. 2018), makes it abundantly clear that the TCPA requires that to hold a party liable as a "sender" of a fax, the party must have physically

1

transmitted the fax or caused the fax to be sent—and American Woodmark did neither—its motion is **GRANTED**.

II.	BACKGROUND

Marblecast is a Michigan kitchen and bath contractor. American Woodmark is a kitchen and bath cabinet manufacturer based in Virginia. In November 2016, Garner received an unsolicited fax (the "Fax") referencing Marblecast's "complete line of quality cultured marble and solid surface." The Fax states that customers will "deal direct with factory." Under a heading entitled "KITCHEN AND BATH CABINETRY (DISCOUNTED 65%)," the Fax mentions, among other things, "Waypoint Cabinetry" and the website, www.waypointlivingspaces.com. This is a reference to the Waypoint Living Spaces brand of cabinetry manufactured by American Woodmark. The Fax provides Marblecast's website and contact information for "Bud" at Marblecast.

Garner filed a class action suit against Marblecast and American Woodmark, alleging that Defendants are liable under the TCPA and for conversion based on the Fax sent to Garner and at least 39 other recipients. The Court previously dismissed Garner's conversion claim [Doc. 36].

The Court noted in its earlier order that Garner plausibly stated a strict liability cause of action that American Woodmark is a "sender" under the TCPA, because its goods were advertised or promoted in the Fax. However, after the Court's order, the Sixth Circuit decided *Health One Medical Center, Eastpointe P.L.L.C. v. Mohawk, Inc.*, 889 F.3d 800 (6th Cir. 2018). American Woodmark now moves for summary judgment on Garner's strict liability claim, arguing that Garner failed to offer evidence from which a reasonable juror could find that American Woodmark "sent" the Fax, as the *Health One*

Court interpreted the meaning of the term "sender" under the TCPA and its applicable regulations.

### III. STANDARD OF REVIEW

Summary Judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden to demonstrate the basis for its motion and to identify portions of the record which show an absence of a genuine issue of fact. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that burden is met, the non-moving party must set forth specific facts that present a "genuine issue for trial." *Id.* The existence of a mere scintilla of evidence to support a plaintiff's position will not suffice; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties must support assertions of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

### IV. DISCUSSION

**A. Garner's Strict Liability TCPA Claim Fails as a Matter of Law**

Notwithstanding the fact that American Woodmark did not physically send the Fax, Garner says that American Woodmark is strictly liable as a sender under the TCPA because the Fax advertised or promoted its goods or services. Garner cites two cases in support of its sender-strict liability theory: *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792

F.3d 627 (6th Cir. 2015), and *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016). Garner's reliance on these two cases is ultimately misplaced. Both cases involved defendants who, unlike American Woodmark, hired fax broadcasters; moreover, the Sixth Circuit's decision in *Health One* precludes Garner's strict liability claim and mandates that this Court enter summary judgment in favor of American Woodmark.

Garner says that *Siding* and *Imhoff* stand for the proposition that an entity is liable under the TCPA even if its only involvement with an alleged unsolicited fax advertisement was that its goods or services were advertised or promoted. Moreover, Garner argues that the Sixth Circuit's decision in *Health One* conflicts with its earlier holdings in *Siding* and *Imhoff*, and that to the extent that they do conflict, the Sixth Circuit, and inevitably this Court, must follow the earlier precedent. Garner, however, neglects to mention that the *Health One* Court explicitly rejected an intra-circuit conflict and reconciled its decision with the Sixth Circuit's earlier precedent in *Siding* and *Imhoff*.

The TCPA makes it unlawful to send unsolicited fax advertisements. 47 U.S.C. § 227(b)(1)(c). The Federal Communications Commission ("FCC") promulgated regulations which define the sender of a fax as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). Garner maintains that the "whose goods or services are advertised or promoted" portion of the regulation creates a strict liability standard.

In *Health One*, the Sixth Circuit held that an innocent party cannot be liable under the TCPA just because its goods were advertised or promoted in an unsolicited fax

advertisement. *Id.* at 802. Health One filed suit against pharmaceutical wholesalers and manufacturers, alleging that both violated the TCPA by sending unsolicited junk faxes that listed prices for the manufacturers' pharmaceuticals. *Id.* at 801. The manufacturers filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that they did not "send" the faxes under the TCPA because they knew nothing about them. *Id.*

Like Garner, Health One argued that the *Siding* and *Imhoff* courts interpreted the applicable FCC regulation as creating a strict liability standard for entities whose goods or services were advertised in an unsolicited junk fax. *Id.* As such, Health One contended, the defendant manufacturers were liable under the TCPA, lack of knowledge notwithstanding. *Id.*

The Court began by noting that Health One read the 2006 FCC regulation "woefully out of context." *Id.* "What matters is that—read in the context of the statute itself—the regulation does not purport to impose liability upon parties that did not 'send' the fax at all." *Id.* American Woodmark—like the defendants in *Health One*—neither dispatched the faxes nor caused them to be sent.

The *Health One* Court also cited *Siding* and *Imhoff*, reconciling the three holdings by noting that "[n]either of the cases . . . support[sic] a different result here. In both those cases the defendant in fact hired a fax broadcaster to send out the junk faxes. In neither case did we hold . . . that an innocent party . . . could by some legal alchemy be held liable for having 'sent' the faxes." *Id.*

The facts of this case fall somewhere between those in *Siding* and *Imhoff* on the one hand, and *Health One* on the other. American Woodmark, unlike the defendants in

*Siding* and *Imhoff*, did not hire a fax broadcaster to advertise its products. American Woodmark did, however, enter a distributorship agreement with Marblecast that imposed on Marblecast the duty to "use its best efforts to promote, maintain and increase sales of [American Woodmark] products." Materially, the Agreement neither explicitly requests nor authorizes Marblecast to advertise American Woodmark's products via fax. Moreover, Marblecast hired jBlast, the fax broadcaster, without the consent or direction of American Woodmark.

Todd Sabine, vice president of sales and marketing for American Woodmark's dealer distributor channel, testified that Marblecast did not discuss the Fax with anyone at American Woodmark before it was sent. Moreover, Walter Olejniczak, founder and owner of Marblecast, testified that American Woodmark had no independent knowledge that Marblecast was sending the Fax. Most importantly, Olejniczak testified that the Fax was sent to promote Marblecast's business and that Marblecast highlighted American Woodmark only because "I just happened to put down the company we were working with at that time"; additionally, Olejniczak stated that he "wasn't doing the faxing mostly for [American Woodmark]. The faxing was mainly done for [Marblecast's] cultured marble products, and that's what the faxing basically was for, selling countertops and windowsills." Essentially, Olejniczak's testimony shows that Marblecast would have sent the Fax even had it never agreed to sell American Woodmark's products; in the absence of an agreement with American Woodmark, Marblecast "could have put down Home Depot, could have put down Lowe's . . . could have put down anything."

Given American Woodmark's clear lack of knowledge and involvement—and the evidence showing that Marblecast sent the Fax to advertise its own business and would

have sent it even had it never contracted with American Woodmark—no reasonable juror could find that American Woodmark "sent" the Fax, as that term is defined by the TCPA in accordance with the Sixth Circuit's holding in *Health One*. American Woodmark simply did not cause the Fax to be sent.

There is no genuine issue of material fact for trial.

## B. The Court Previously Dismissed Garner's "On Whose Behalf" Theory of Liability

Earlier, the Court dismissed Garner's "on whose behalf" theory of liability under the TCPA. The Court gave Garner the opportunity to file for leave to amend its complaint should facts supporting American Woodmark's liability under the "on whose behalf" theory arise. Garner never did so. Garner's attempt to revive this claim in its response to American Woodmark's motion for summary judgment is inappropriate; the Court declines Garner's request.

## V. CONCLUSION

*Health One* squarely addressed whether "sender" liability under the TCPA could be imposed where an entity is completely unaware that its information is included in a fax that it did not send or cause to be sent. American Woodmark's motion for summary judgment is **GRANTED**. No reasonable juror could find that American Woodmark sent the Fax under the Sixth Circuit's interpretation of the TCPA in *Health One*. Garner's TCPA claim against American Woodmark is **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED**.

                S/ Victoria A. Roberts
                Victoria A. Roberts
                United States District Judge

Dated: December 26, 2018